**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-61247-DIMITROULEAS/STRAUSS**

**JEWELL A. DIXON,**

Plaintiff,

v.

**EXACT BILLING SOLUTIONS, LLC**
**and ICBD HOLDINGS, LLC,**

Defendants.
___________________________________/

# REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [DE 42] (the "Motion"), which has been referred to me to take all necessary and proper action as required by law [DE 11, 36]. I have carefully reviewed and considered the Motion, the Response [DE 43], the Reply [DE 46], and the other pertinent portions of the record. For the reasons discussed below, I respectfully **RECOMMEND** that the Motion [DE 42] be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiff Jewell Dixon ("Plaintiff"), proceeding *pro se*, filed a six-count Second Amended Complaint against Defendants Exact Billing Solutions LLC ("Exact Billing") and ICBD Holdings LLC ("ICBD") (collectively, "Defendants"). *See generally* [DE 38]. Plaintiff alleges claims against Defendants under the Americans with Disabilities Act of 1990 ("ADA") and the Genetic Information Nondiscrimination Act of 2008 ("GINA"). *See id.* ¶ 1. Plaintiff also alleges a claim for negligent supervision and retention. *See id.* at 35-38.

Exact Billing hired Plaintiff, who is a Black woman with sickle cell disease and a preexisting back injury, to work as a records analyst. *Id.* ¶¶ 3, 7. ICBD is Exact Billing's parent and controlling entity. *Id.* ¶ 9. During the relevant period, ICBD exercised control over many employment functions, such human resources and ADA accommodation processes. *Id.* Plaintiff's sickle cell condition is a chronic illness. *Id.* ¶ 11. Plaintiff explains in her allegations that "[c]old exposure and prolonged physical immobility are well-known clinical triggers for sickle cell crises." *Id.* To manage the condition, Plaintiff needs to avoid prolonged sitting, drink a lot of fluids, and use the restroom frequently. *Id.*

On January 27, 2025, Plaintiff suffered a sickle cell crisis at work. *Id.* ¶¶ 13-14. That day, Exact Billing had relocated Plaintiff's department to the second floor of the facility and lowered the temperature of the office. *Id.* ¶ 13. Plaintiff alleges that her sickle cell crisis resulted from the "freezing conditions" and required her to seek medical care. *Id.* ¶ 14. After the crisis, Plaintiff provided medical absence slips to a supervisor and Human Resources ("HR") personnel. *Id.* ¶¶ 14-15. She sent a subsequent email as well. *Id.* The medical absence slips documented Plaintiff's need for treatment. *Id.* ¶ 14.

Days later, Defendants provided Plaintiff with a "Reasonable Accommodation Request Form" and a "Medical Information Request Form."[1] *Id.* ¶ 16. The Medical Information Request Form asks for medical information from the employee to whom the form is given. [DE 42-1] at 1-2. The employee fills out the top section to authorize the release of medical information by the

[1] As with her prior complaint, Plaintiff did not attach the forms to the Second Amended Complaint. However, Defendants attached the forms to their prior motion to dismiss. *See* [DE 24-1] at 1-2; [DE 24-2] at 1. In addition, Defendants reattach the "Medical Information Request Form" to the Motion. *See* [DE 42-1] at 1-2. Plaintiff has never challenged the authenticity of these forms, and they are central to her GINA allegations. The Court can therefore consider them at the motion-to-dismiss stage without turning the Motion into one for summary judgment. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020).

employee's physician or care provider for determining the availability of accommodations. *Id.* at 1. The release states, "I hereby authorize the release of the following information to the ABA Centers of America for the purpose of determining the availability of reasonable workplace accommodations. I further authorize ABA Centers of America to seek clarification of this documentation if necessary by contacting my physician or care provider."[2] *Id.* The employee's physician or care provider fills out the second section by detailing the employee's condition. *Id.* at 1-2. The second page contains an eight-line GINA disclaimer that states in part, "[W]e are asking that you not provide any genetic information when responding to this request for medical information." *Id.* at 2. Plaintiff reviewed the forms and determined that they were asking for too much information, so she did not complete them. [DE 38] ¶¶ 17-18.

The week after Plaintiff's January 27, 2025 sickle cell crisis, Plaintiff asked a director for a cordless headset (as a reasonable accommodation) so that she could move freely and use the restroom while still performing her duties. *Id.* ¶ 20. Despite being told by the director that she would place an order and that an order was later placed, Plaintiff never received a headset. *Id.* Plaintiff made multiple follow-up requests for a cordless headset, but she never received one. *Id.* ¶ 21. In mid-March 2025, Plaintiff submitted a renewed request for a cordless headset as an ADA reasonable accommodation. *Id.* ¶ 22. When three headsets were delivered to the office, a manager said to Plaintiff (in front of coworkers) that she did not think that Plaintiff "should get a headset" and that "other employees would want one" if Plaintiff got a headset. *Id.* After this interaction, a director privately told Plaintiff that headsets were "only for managers." *Id.* According to Plaintiff, however, at least one non-manager received a headset. *Id.*

---

[2] The parties do not make clear whether ABA Centers of America is a separate entity from Defendants. I assume for purposes of this report and recommendation that any distinction is immaterial since the parties have not addressed this point.

Throughout the Second Amended Complaint, Plaintiff also alleges making complaints regarding general workplace conditions and being denied promotion and transfer opportunities under some internal policy. *Id.* ¶¶ 23-27, 32-33. Plaintiff escalated some of her concerns to upper management and company executives. *See id.* ¶¶ 28, 35. At one point, Plaintiff attended a meeting with an HR representative and two directors. *Id.* ¶¶ 29-30. During the meeting, Plaintiff raised various issues, including "being excluded from a team meeting with other SCA Records Analysts." *Id.* ¶ 30. One director responded by saying, "Jewell, now you're acting erratic." *Id.*

The Second Amended Complaint similarly contains allegations that, over time, Plaintiff began to experience increased scrutiny, exclusion, and denial of support, which includes denial of accommodations and additional restrictions placed on her work activities. *Id.* ¶ 31. Some of these additional restrictions included a movement-reporting requirement that either only applied to Plaintiff or was selectively enforced against her. *See* [DE 38] ¶ 37. Plaintiff had to "report every movement during the workday, including restroom use." *Id.* Plaintiff was additionally subjected to another requirement that she "remain at her workstation and could not leave without supervisory clearance, including for restroom use." *Id.* ¶ 38. Plaintiff alleges that these selectively enforced requirements exacerbated her sickle cell condition and preexisting back injury by limiting her mobility. *See id.* ¶¶ 37-38, 43, 94. Furthermore, after one of her complaints to executives, Plaintiff's work computer was "remotely accessed and mirrored . . . without her consent . . . ." [DE 38] ¶ 36.

Plaintiff elsewhere alleges that, during her employment, a lockdown occurred at the office due to a security threat. *Id.* ¶ 39-40. Management did not provide an explanation regarding the lockdown or subsequent increased security presence, and Plaintiff only learned of the underlying

concern from communications with coworkers. *Id.* Plaintiff alleges that this incident caused her fear and anxiety. *Id.*

Toward the end of Plaintiff's employment, Plaintiff was admitted to the hospital for a sickle cell crisis and severe lower back pain. *Id.* ¶¶ 42-43. Plaintiff notified HR personnel, two supervisors, and a manager that she was hospitalized and unable to report to work the next day. *Id.* ¶ 44. On May 1, 2025, Plaintiff sent a formal letter to HR, which included a letter from one of her physicians. *Id.* ¶ 46. The letter expressly sought various accommodations. *Id.* Plaintiff's letter also addressed the accommodation forms previously issued to Plaintiff by Defendants: "Out of respect for my privacy and under protections provided by the Genetic Information Nondiscrimination Act (GINA), I will not be releasing broader medical records or responding to forms that request protected or irrelevant medical data." *Id.* ¶ 47.

When Plaintiff returned to work several days later, on May 5, 2025, a HR representative told Plaintiff that "she could not remain on-site unless she resumed full job duties without accommodations." *Id.* ¶ 50. The HR representative further stated that Plaintiff would not be paid unless she performed her duties under unaccommodated conditions. *Id.* "Working under these conditions," Plaintiff asserts, "would have required Plaintiff to perform duties in direct violation of her physician's documented restrictions, placing her health at serious risk." *Id.* ¶ 51. Plaintiff responded by sending a written notice of constructive discharge to HR personnel and one of her supervisors. *Id.* ¶ 52.

After exhausting her administrative remedies with the U.S. Equal Employment Opportunity Commission and Florida Commission on Human Relations, *see id.* ¶¶ 4-6, Plaintiff filed this suit, *see* [DE 1]. Defendants appeared and filed a motion to dismiss the complaint, leading Plaintiff to file an amended complaint. *See* [DE 20, 21]. Defendants then filed another motion to

dismiss. [DE 24]. I addressed that motion to dismiss in a prior report and recommendation, recommending that the Court grant the motion in part, deny it in part, and give Plaintiff leave to amend. *See* [DE 24, 37]. Plaintiff did not file objections to the report and recommendation; instead, she filed the Second Amended Complaint. *See* [DE 38]. Although Plaintiff had not sought leave to amend, the Court granted her leave by denying the prior motion to dismiss and the report and recommendation as moot. *See* [DE 39]. Defendants later filed the Motion, which is their third motion to dismiss. *See* [DE 42]. The Motion only challenges four of the six counts in the Second Amended Complaint. *See* [DE 42] at 3-16. Defendants do not seek to dismiss Plaintiff's failure-to-accommodate or retaliation claims under the ADA.[3] *See id.* Rather, Defendants seek dismissal of Plaintiff's claims for GINA interference, GINA retaliation, ADA hostile work environment, and negligent supervision and retention. *See id.*

For the reasons stated below, I respectfully recommend that the Motion be granted in part and denied in part.[4] The Court should dismiss the claims for GINA interference, GINA retaliation, and negligent supervision and retention because Plaintiff fails to state a plausible claim.

## LEGAL STANDARD

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a

[3] Defendants technically ask the Court to dismiss Count II, the ADA retaliation claim, but the Motion does not contain any argument as to Count II. *See* [DE 42] at 17.

[4] Defendants also argue that Plaintiff's Second Amended Complaint contains allegations that are immaterial and should be stricken. *See* [DE 42] at 4. However, Defendants do not specify which allegations in which paragraphs should be stricken, and Plaintiff relies on several of the challenged allegations to try to support her claim. Therefore, I do not recommend striking allegations at this time.

"formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## ANALYSIS

### I. INTERFERENCE WITH RIGHTS UNDER GINA (COUNT IV)[5]

Defendants argue that Plaintiff has not adequately alleged a claim for interference under GINA because the Second Amended Complaint does not allege that Defendants requested, required, or obtained genetic information as contemplated by the statute. *See* [DE 42] at 9-11. Plaintiff responds that Defendants violated GINA because the at-issue form contained a release that would have allowed Defendants to "seek clarification" from Plaintiff's physician, creating a risk of disclosure of genetic information. *See* [DE 43] at 5-6. Plaintiff also asserts that the inclusion of a GINA disclaimer in the form does not eliminate the risk of Defendants potentially obtaining genetic information. *Id.* at 5. According to Plaintiff, she "need only plausibly allege that the authorization created a mechanism through which genetic information could be requested or obtained." *Id.* at 5. But this reading of GINA conflicts with the statute's plain, unambiguous language. Thus, I disagree with Plaintiff and recommend that this claim be dismissed.

Under GINA, employers may not "request, require, or purchase genetic information with respect to an employee or a family member of the employee . . . ." 42 U.S.C § 2000ff-1(b). An individual's "genetic information" is narrowly defined as "(i) such individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual." 42 U.S.C § 2000ff(4)(A). "The term 'genetic test' means an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." *Id.* § 2000ff(7)(A).

---

[5] I address the GINA-based claims out of order (as raised in the Second Amended Complaint) because the interference claim provides analysis that places the retaliation claim in context.

Importantly, GINA makes a "statutory distinction between 'medical information' and 'genetic information.'" *Ortiz v. City of San Antonio Fire Dept.*, 806 F.3d 822, 826 (5th Cir. 2015); *see Gabriel v. SLS Lux Brickell Hotel*, No. 24-CV-23572, 2025 WL 2020154, at *4 (S.D. Fla. Jan. 15, 2025) ("[G]enetic information isn't the same as medical information generally."), *appeal dismissed sub nom. Gabriel v. SLS LUX Brickell Hotel & Residences*, No. 25-12416-F, 2025 WL 2902042 (11th Cir. Aug. 21, 2025). Consistent with this distinction, GINA expressly states that an employer does not violate the statute "based on the use, acquisition, or disclosure of medical information that is not genetic information about a manifested disease, disorder, or pathological condition of an employee or member, including a manifested disease, disorder, or pathological condition that has or may have a genetic basis." 42 U.S.C. § 2000ff-9; *see Jackson v. Regal Beloit Am., Inc.*, No. CV 16-134-DLB-CJS, 2018 WL 3078760, at *15 (E.D. Ky. June 21, 2018) (quoting 42 U.S.C. § 2000ff-9)).

Even where an employer does request, require, or purchase genetic information instead of medical information, GINA includes multiple exceptions. *Williams v. Graphic Packaging Int'l, Inc.*, 790 F. App'x 745, 754 (6th Cir. 2019); *see* 42 U.S.C § 2000ff-1(b)(1)-(6). For example, "if 'an employer inadvertently requests or requires family medical history of the employee or family member of the employee,' then the employer has not violated GINA." *Williams*, 790 F. App'x at 754 (quoting 42 U.S.C. § 2000ff-1(b)(1)); 29 C.F.R. § 1635.8(b)(1)(i).

Here, Plaintiff cannot state a plausible claim for GINA interference because Plaintiff has not alleged that Defendants "request[ed], require[d], or purchase[d] genetic information." 42 U.S.C § 2000ff-1(b). Plaintiff's Second Amended Complaint specifically states that "Plaintiff does *not* allege that the written questions on the form sought genetic information as defined by GINA." [DE 38] ¶ 89 (emphasis added). Plaintiff's theory instead rests on the idea that, because the form

also asked Plaintiff to sign a release that would have allowed Defendants to "seek clarification" from Plaintiff's physician if Defendants deemed it necessary, the form created a risk of disclosure of genetic information in future interactions. Plaintiff therefore believes that she need only allege that the form "created a mechanism through which genetic information *could* be requested or obtained." [DE 43] at 5 (emphasis added). But GINA's general prohibition is clear and unambiguous: it exposes an employer to potential liability only where they "request, require, or purchase" genetic information of an employee or an employee's family member—not merely when the employer could do so but has not. *See* 42 U.S.C § 2000ff-1(b); *see also Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 777 (11th Cir. 2015) (explaining that, where meaning of statute's language is plain and unambiguous, courts must apply that meaning). Indeed, the risk that an employer *could* request, require, or purchase genetic information arguably always exists. Yet GINA imposes liability only when the employer does so. Because it lacks sufficient factual allegations plausibly showing that Defendants violated GINA's general prohibition on requesting, requiring, or purchasing genetic information, Plaintiff's Second Amended Complaint fails to state a claim for GINA interference.

Still, Plaintiff's theory appears to be premised on a regulation promulgated under GINA. *See* [DE 38] ¶¶ 88-89 (citing 29 C.F.R. § 1635.8(a)). Plaintiff alleges that, under 29 C.F.R. § 1635.8(a), GINA prohibits "making requests in a way that is reasonably likely to result in a covered entity obtaining genetic information." *Id.* ¶ 88. The regulation that Plaintiff relies on mirrors GINA's general prohibition and states that "[a] covered entity may not *request*, require, or purchase genetic information of an individual or family member of the individual . . . ." 29 C.F.R. § 1635.8(a) (emphasis added). Under the regulation, a "[r]equest includes . . . making requests for information about an individual's current health status *in a way that is likely to result in a covered*

*entity obtaining genetic information*." *Id.* (emphasis added). Plaintiff reads this definition of request to mean that the mere possibility of receiving genetic information—had she given Defendants authorization to seek potential clarification from her physician—violates the statute. *See* [DE 38] ¶ 89; [DE 43] at 5-6. Plaintiff is wrong.

The problem is that Plaintiff does not allege that Defendants ever "requested" anything from her physician. Her allegations are merely an apparent concession that the written questions on the form did not seek genetic information themselves, but that Defendants could have potentially received genetic information if she signed the release, her physician responded to the written questions, and Defendants chose to seek clarification from the physician afterward. The theory requires speculating about how Defendants could have gone on to ask Plaintiff's physician for clarification in some future interaction that never happened. But again, GINA does not prohibit the mere possibility that an employer might choose to request genetic information later. GINA's prohibition is instead violated when, as the statute's plain and unambiguous text states, the employer "request[s], require[s], or purchase[s]" genetic information related to an employee. 42 U.S.C. § 2000ff-1(a).

Furthermore, Plaintiff's claim would fail even if she was challenging the form's written questions. As I explained in my prior report and recommendation, the written questions on the form do not raise a plausible inference that Defendants requested genetic information instead of basic medical information. *See* [DE 37] at 32-35. And, critically, the form contains an express GINA disclaimer for the physician that substantially tracks the language of the disclaimer provided in the regulation. *Compare* [DE 42-1] at 2, *with* 29 C.F.R. § 1635.8(b)(1)(i)(B). The inclusion of a disclaimer substantially like the one in the regulation means that "any receipt of genetic information in response to the request for medical information [would] be deemed inadvertent[.]"

29 C.F.R. § 1635.8(b)(1)(i)(B). Where an employer's request for genetic information is inadvertent, the employer cannot be held liable under GINA. *See* 42 U.S.C. § 2000ff-1(b)(1) (exempting inadvertent requests for genetic information); *Branson v. Caterpillar, Inc.*, No. 23 CV 14329, 2024 WL 3823157, at *4 (N.D. Ill. Aug. 14, 2024) ("[A]n employer can avoid liability by properly warning an individual to withhold genetic information in responding to a request for medical information."); *Montgomery v. Union Pac. R.R. Co.*, No. CV-17-00201-TUC-RM, 2019 WL 1787326, at *4 (D. Ariz. Apr. 24, 2019) ("Under GINA, an employer who uses the specified disclaimer language is absolved of any liability." (citing 29 C.F.R. § 1635.8(b)(1)(i)(B))). Although Plaintiff argues that the form's GINA disclaimer "does not restrict what the physician may disclose when contacted directly under the open-ended authorization in Section 1 [of the form]," [DE 43] at 5, this argument only underscores the broader point. Plaintiff has not alleged that Defendants made *any* request to her physician. If no request was made, Defendants cannot be liable under GINA. Whether Defendants could make a request in the future is immaterial.

At bottom, Plaintiff has not alleged facts plausibly showing that Defendants requested, required, or purchased genetic information with respect to Plaintiff or a family member Plaintiff. Therefore, this count should be dismissed.

## II. RETALIATION UNDER GINA (COUNT III)

Defendants argue that Plaintiff's claim for retaliation under GINA fails for two reasons. First, Defendants argue that Plaintiff did not engage in statutorily protected activity because Plaintiff fails to plead that her belief that she was opposing conduct prohibited by GINA was objectively reasonable. *See* [DE 42] at 5-8. Second, Defendants argue that Plaintiff has not plausibly alleged any causal connection between her statutorily protected activity and an adverse employment action. *Id.* at 8-9. Plaintiff responds that the small four-day gap between when she

opposed Defendants' conduct (expressly because of GINA) and when she was constructively discharged is sufficient to plausibly allege causation. [DE 43] at 4-5. She further responds that her opposition was objectively reasonable because the release on the form would, in her view, have allowed Defendants to have unrestricted communication with Plaintiff's physician, risking the disclosure of genetic information. *Id.* at 3-4. Although Plaintiff's has clarified her allegations (compared to her previous complaint), they are too thin to state a plausible claim for GINA-based retaliation. Specifically, she has failed to plausibly allege that her belief that she was opposing conduct prohibited by GINA was objectively reasonable.

GINA's anti-retaliation provision states, "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . ." 42 U.S.C. § 2000ff-6(f). The text of GINA's anti-retaliation provision is essentially identical to text of the anti-retaliation provision found in the ADA. *Compare id.*, with 42 U.S.C. § 12203(a). Accordingly, courts often apply the same elements for an ADA retaliation claim to a GINA retaliation claim. *See, e.g.*, *Griffin v. City of South Pasadena*, No. 25-CV-02787, 2026 WL 322757, at *7 (M.D. Fla. Feb. 6, 2026); *Conner-Goodgame v. Wells Fargo Bank, N.A.*, No. 12-CV-03426, 2013 WL 5428448, at *10 (N.D. Ala. Sept. 26, 2013). Applying those elements, Plaintiff must show that "(1) she engaged in a statutorily protected expression, (2) she suffered an adverse employment action, and (3) there was a causal link between the two." *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001)).

Plaintiff claims that her protected activity was invoking GINA in a letter to HR on May 1, 2025. *See* [DE 38] ¶ 81. Plaintiff wrote, "Out of respect for my privacy and under protections provided by the Genetic Information Nondiscrimination Act (GINA), I will not be releasing broad

medical records or responding to forms that request protected or irrelevant medical data." *Id.* ¶¶ 46-47, 81. Plaintiff's refusal to sign a release because of her belief that the release violates GINA would qualify as opposition conduct. *See* 42 U.S.C. § 2000ff-6(f); *see also Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009) (explaining meaning of opposition conduct for retaliation claims under analogous Title VII framework). Moreover, Plaintiff's allegations explain when and to whom she sent the letter. *See* [DE 38] ¶¶ 46-47, 50, 81.

While it appears that Plaintiff had a subjective belief that she was opposing conduct that would violate GINA, Defendants argue that Plaintiff failed to allege enough factual content to make it plausible that her belief was objectively reasonable. [DE 42] at 6-8. Retaliation claims premised on opposition conduct require that the plaintiff hold a subjective, good faith belief that the employer was engaged in unlawful practices and that this belief be objectively reasonable. *Butler v. Ala. Dept. of Transp.*, 536 F.3d 1209, 1213 (11th Cir. 2008) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). While the conduct need not be actually unlawful, the belief that it is still must be objectively reasonable. *See Dixon v. Hallmark Cos.*, 627 F.3d 849, 857 (11th Cir. 2010). Often, assessing whether a belief is objectively reasonable is better assessed at summary judgment. *See, e.g.*, *Coleman v. C&S Wholesale Grocers, Inc.*, No. 19-20130-CIV, 2019 WL 13235811, at *7 (S.D. Fla. Aug. 26, 2019) (quoting *Strong v. AngioDynamics, Inc.*, No. 16-CV-01800, 2017 WL 1233796, at *5 (N.D. Ala. Apr. 4, 2017))). Yet, even at the motion-to-dismiss stage, a plaintiff must allege facts making it *plausible* that their belief was objectively reasonable. *See Saliard v. Bellsouth Telecomms. LLC*, No. 25-CV-00102, 2025 WL 5090702, at *9 (N.D. Ga. Apr. 18, 2026) ("However, plaintiff cannot plausibly show that his belief 'was objectively reasonable in light of the facts and record presented.'" (quoting *Little*, 103 F.3d at 960)), *report and recommendation adopted*, 2025 WL 5095413 (N.D. Ga. May

22, 2025); *see also McCone v. Exela Techs., Inc.*, No. 21-CV-912, 2021 WL 7501823, at *5 (M.D. Fla. Sept. 27, 2021) ("Plaintiff must have pled facts plausibly establishing that he subjectively believed that Defendants' conduct was unlawful and that this belief was objectively reasonable.").

In this case, even taking Plaintiff's allegations in the light most favorable to her, Plaintiff's belief was not objectively reasonable. "The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999). A plaintiff "may not stand on their ignorance of the substantive law to argue that their belief was reasonable." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1317 (11th Cir. 2002). Plaintiff's allegations focus on the release that would have allowed Defendants to seek clarification, if they deemed it necessary, from her physician. *See* [DE 38] ¶ 82. She is not asserting that the written questions on the form sought genetic information. *Id.* ¶ 89 ("Plaintiff does not allege that the written questions on the form sought genetic information as defined by GINA.").

Yet, as explained above while addressing her claim for GINA interference, Plaintiff has not plausibly alleged that the form's release violates GINA's prohibition on requesting, requiring, or purchasing genetic information of an employee or a family member of an employee. And it is entirely unclear how Plaintiff could have an objectively reasonable belief that she was opposing conduct prohibited by GINA in light of the form's express instruction to the physician *not* to provide genetic information—instructions that not only make clear that the employer is *not* "request[ing], requir[ing], or purchas[ing] genetic information" but also undermine the idea that their requests are "likely to result" in the disclosure of genetic information. *See* 42 U.S.C. § 2000ff-1(b); 29 C.F.R. § 1635.8(a). That is particularly so when the regulation on which Plaintiff relies expressly protects employers from liability if they use the language that Defendants did. *See* 29

C.F.R. § 1635.8(b)(1)(i)(B) ("If a covered entity uses language such as the following, any receipt of genetic information in response to the request for medical information will be deemed inadvertent."). Although Plaintiff attempts to go beyond the form and its disclaimer, she relies on a speculative hypothetical of what could occur if the employer asked for clarification at some future time. The problem, however, is that the plain and unambiguous language of GINA does not make an employer liable just because it *could* violate the prohibition. Indeed, there plainly cannot be a request made "in a way that is likely to result in a covered entity obtaining genetic information," 29 C.F.R. § 1635.8(a), when there is no request to begin. The only thing that Plaintiff alleges Defendants did was provide a form with a GINA disclaimer—a disclaimer that expressly absolves them of liability.

In short, I cannot conclude that Plaintiff has plausibly alleged a reasonable belief that Defendants' conduct was unlawful where the belief conflicts with the plain language of the statute. Because Plaintiff has not adequately alleged that her belief was objectively reasonable, she has not alleged a protected activity and thus cannot state a claim for GINA retaliation. As a result, this claim should be dismissed.

## III. HOSTILE WORK ENVIRONMENT UNDER ADA (COUNT V)

Defendants argue for dismissal of Plaintiff's disability-based claim for hostile work environment because they claim that Plaintiff still has not alleged sufficient facts to raise a plausible inference that the challenged conduct was either tied to her disability or sufficiently severe or pervasive to constitute a hostile work environment. [DE 42] at 11-14; [DE 46] at 5-7. Plaintiff disagrees, asserting that each incident connects explicitly to her disability and that the conduct, viewed together, rises to the level of severe or pervasive harassment. [DE 43] at 6-8. I

conclude that Plaintiff's additional allegations in the Second Amended Complaint are enough—just barely—to state a claim for hostile work environment under the ADA.

The Eleventh Circuit has not held in a published opinion that the ADA supports a hostile-work-environment claim. *Doe v. Directions for Mental Health, Inc.*, No. 24-CV-02530, 2025 WL 589044, at *4 (M.D. Fla. Feb. 24, 2025); *Narvaez v. Fla. Health Scis. Ctr.*, No. 23-CV-2195, 2024 WL 167260, at *3 n.4 (M.D. Fla. Jan. 16, 2024). Yet the Eleventh Circuit has assumed without deciding that an employee can bring a disability-based claim for hostile work environment. *See Stewart v. Jones Util. & Contracting Co. Inc.*, 806 F. App'x 738, 741 (11th Cir. 2020) ("[W]e assume for purposes of this opinion that an ADA hostile-work-environment claim exists as well."). Moreover, "several other circuits have concluded that the ADA provides a cognizable claim for a disability-based hostile work environment." *Cooper v. CLP Corp.*, 679 F. App'x 851, 853 n.2 (11th Cir. 2017). Because the parties again do not address this issue, I assume that the ADA allows for a hostile-work-environment claim premised on disability.

"To state a claim for hostile work environment, a plaintiff must allege that: (1) she belongs to a protected group; (2) she has been subject to unwelcome harassment; (3) the harassment must have been based on a protected characteristic of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under either a theory of vicarious or direct liability." *Usai v. Club Mgmt. Mia. II, LLC*, 801 F. Supp. 3d 1295, 1321 (S.D. Fla. 2025); *see Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). Defendants only challenge the third and fourth elements.

Again, to be actionable, disability-based harassment must be "so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment."

*Wallin v. Minn. Dept. of Corr.*, 153 F.3d 681, 688 (8th Cir. 1998) (citation modified) (applying Title VII framework to ADA). Harassing conduct only needs to be severe *or* pervasive, not both. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010). Although determining whether disability-based harassment is "severe or pervasive" is usually better determined at the summary-judgment stage rather than on a motion to dismiss, *see Peragine v. Fla. Dep't of Transp.*, No. 25-80460-CIV, 2025 WL 2249982, at *5 (S.D. Fla. Aug. 7, 2025) (citation omitted), "Plaintiff still has the burden of alleging sufficient facts that make [it] plausible that she suffered severe [or] pervasive harassment . . . ." *Edwards v. Ambient Healthcare of Ga., Inc.*, No. 15-CV-0411, 2015 WL 13298082, at *3 (N.D. Ga. Oct. 23, 2015), *report and recommendation adopted*, 2016 WL 8856695 (N.D. Ga. Mar. 24, 2016), *aff'd*, 674 F. App'x 926 (11th Cir. 2017); *see Weatherly v. ABC Legal, Inc.*, No. 23-11143, 2024 WL 2698023, at *9 (11th Cir. May 24, 2024) ("We cannot say the district court erred in finding that Weatherly's allegations failed to make a plausible showing that the workplace harassment on account of race or national origin was so severe or pervasive as to alter the terms and conditions of her employment.").

The "severe or pervasive" analysis contains two components: the plaintiff's work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citation omitted). "To evaluate whether a work environment is objectively hostile, we consider four factors: '(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.'" *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1250-51 (11th Cir. 2014) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc)). Federal

workplace discrimination laws are not a general civility code, so offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *See Faragher*, 524 U.S. at 788; *Mendoza*, 195 F.3d at 1245; *Wallin*, 153 F.3d at 688. Moreover, ordinary tribulations of the workplace, such as the sporadic use of abusive language and occasional teasing, are generally not actionable. *Wallin*, 153 F.3d at 688.

For purposes of the Motion, I conclude that Plaintiff's additional allegations in the Second Amended Complaint make out a claim for hostile work environment claim that is at least plausible. Plaintiff relies on the following incidents to support her claim for hostile work environment based on disability: (1) Defendants assigned a disproportionately high workload to Plaintiff as a new employee without giving her proper training; (2) one director said during a meeting that Plaintiff was "acting erratic" after Plaintiff had raised, among other things, the issue of being excluded from a team meeting with other SCA Records Analysts; (3) while in front of two coworkers, one manager told Plaintiff, "I don't think you should get a headset, but because Vanessa said to order it, I said yes," adding that "other employees would want one" if Plaintiff got a headset; (4) one director told Plaintiff that headsets were "only for managers," even though at least one non-manager received a headset; (5) Defendants required Plaintiff to report her movements throughout the workday, including her restroom use, which was a selectively enforced requirement that applied only to Plaintiff and interfered with her documented need for physical mobility and restroom access because of her sickle cell disease; (6) someone remotely accessed Plaintiff's computer and mirrored it days after she complained to executive leadership; (7) Defendants failed to accommodate Plaintiff's disability for over four months despite Plaintiff making repeated requests, which eventually led Plaintiff to experience physical and mental harm; (8) Defendants required Plaintiff to remain at her workstation and not leave unless she received authorization from

a supervisor, including for restroom use, which violated medical limitations and caused physical harm; and (9) Plaintiff and other SCA Records Analysts experienced unequal treatment, like exclusion from meetings and training. *See* [DE 38] ¶ 94, at 31-33.

To be clear, most of the above instances do not cure the defects from the prior complaint. Most of the above instances cannot (alone or in combination) be fairly described as "harassment" and, for many of them, the allegations fail to raise any inference that the alleged harassment was based on Plaintiff's disability. Far from alleging endless teasing and abuse by Defendants regarding her sickle cell condition or back issues, most of the instances alleged do not even mention or in any way implicate Plaintiff's alleged disabilities. For example, there can be no plausible inference that instances one and nine above—the assignment of too much work to Plaintiff as a new employee and the unequal treatment of SCA Records Analysts as a group—were motivated by Plaintiff's disabilities. The allegations regarding Plaintiff's workload appear to stem from circumstances *before* Plaintiff's sickle cell crisis on January 27, 2025, thus predating any indication by Plaintiff to Defendants that she suffers from sickle cell disease or any other disability. *See* [DE 38] ¶ 12. Similarly, poor treatment of SCA Records Analysts as a group cannot plausibly be motivated by Plaintiff's disabilities. The fact that Plaintiff was herself a SCA Records Analyst does not transform employment decisions affecting the broader work group into disability-based harassment (regardless of how fair or unfair those decisions are).

Most of the other alleged instances do not fare any better. The alleged computer surveillance has no discernable connection to Plaintiff's disability other than the alleged temporal connection to her complaints to executive leadership about a variety of topics. *See* [DE 38] ¶¶ 35-36. The same goes for the allegations of a manager saying in front of others that she does not think that Plaintiff should get a headset or a director saying that Plaintiff was "acting erratic" when

Plaintiff raised various concerns during a meeting. These comments do not contain any explicit reference to a disability. *Cf. Fox v. Gen. Motors Corp.*, 247 F.3d 169, 179 (4th Cir. 2001) (reasoning that plaintiff demonstrated that harassment was sufficiently related to plaintiff's disability because "all of the verbal harassment directed at Fox and the other disabled workers, terms such as 'handicapped MF,' and 'hospital people,' expressly referenced their disabilities and resulting medical restrictions"). Even to the extent that these comments at least tangentially related to Plaintiff's accommodation requests, they hardly amount to the kind of severe or pervasive harassment that amounts to—or even contributes to—a hostile work environment. And even assuming that these comments constitute disability-based harassment, several stray remarks in a four-month period are insufficient to raise a plausible inference of harassment that is severe or pervasive. *Cf. Allen v. Ambu-Stat, LLC*, 799 F. App'x 703, 708-09 (11th Cir. 2020) (affirming summary judgment for employer and reasoning that "five isolated comments" "spread over four months" could "hardly be described as frequent" and thus did not suggest pervasiveness). So, while many of the above experiences may have been unpleasant, they raise no plausible inference that they were due to Plaintiff's disabilities or support (alone or in combination with other incidents) a finding of severe or pervasive harassment.

However, Plaintiff's hostile-work-environment claim now also relies on (1) Defendants' sustained denial of her repeated requests for accommodation for over four months, (2) the selectively enforced reporting requirement that forced Plaintiff to track all movements, including restroom use, during the workday, and (3) the requirement that Plaintiff get a supervisor's authorization to leave her desk, including to use the restroom. According to Plaintiff, Defendants knew that she had a sickle cell condition and that the condition, which necessitates large consumptions of liquids to manage, required Plaintiff to be able to move freely to use the restroom

more often. Plaintiff further alleges that the continued denial of accommodation requests and the restrictions keeping her at her desk violated medical limitations, exacerbated her sickle cell condition, and caused physical or emotional harm. Liberally construing the allegations, I conclude that the prolonged denial of multiple requests for accommodation, combined with workplace requirements that apply only to Plaintiff and exceed her known medical limitations or restrictions, are sufficient to state a plausible claim for hostile work environment under the ADA.

While "the mere denial of a requested accommodation, with nothing more, will not rise to the level of a hostile work environment[,]" "[t]he prolonged denial of a reasonable accommodation can underlie a hostile work environment claim when 'all the circumstances' would support such a claim." *Floyd v. Lee*, 85 F. Supp. 3d 482, 517 & n.54 (D.D.C. 2015). "That is, when making a hostile work environment determination, the jury can weigh a wrongful denial of accommodation alongside evidence of other harassment, and that other evidence can augment the weight of the denial by suggesting discriminatory animus." *Id.* at 517; *see id.* at 518 ("[I]f there were evidence that Ms. Floyd . . . had been denied rest breaks, thereby allowing her failure-to-accommodate claim to survive summary judgment, the factual circumstances of that claim might . . . support a jury finding of a hostile work environment—one centered on a denial of reasonable accommodation and related verbal harassment."); *see also Fox*, 247 F.3d at 179 (holding that reasonable jury could find in favor of a disabled employee on a hostile-work-environment claim because evidence showed a lack of accommodation, along with "regular verbal harassment and occasional physical harassment," including supervisors requiring the employee "to perform tasks beyond his medical restrictions," which "certainly targeted that disability"); *Marshall v. Fed. Exp. Corp.*, 130 F.3d 1095, 1099 (D.C. Cir. 1997) (stating in dicta that scenario where "working conditions inflict pain or hardship on a disabled employee, the employer fails to modify the

conditions upon the employee's demand, and the employee simply bears the conditions . . . might be viewed as the ADA equivalent of the hostile working environment claim").

Although Plaintiff's Second Amended Complaint is basically devoid of allegations of verbal harassment tied to her disability, it still appears that, liberally construed, Plaintiff's allegations of a "sustained" failure to accommodate and forced work restrictions that applied only to her and violated or exacerbated some of her known medical limitations are enough to make out a claim for hostile work environment—though barely. This conduct, if true, could be viewed as targeted, physically threatening or humiliating, and an interference with Plaintiff's job performance. This formulation does make Plaintiff's hostile-work-environment claim dependent on her failure-to-accommodate claim. *See Floyd*, 85 F. Supp. 3d at 518. Yet whether Plaintiff can show that the circumstances surrounding the alleged failure to accommodate constitute severe or pervasive harassment is better left for summary judgment or trial. Accordingly, the Court should deny the Motion to the extent it seeks dismissal of the hostile-work-environment claim.

## IV. NEGLIGENT SUPERVISION AND RETENTION (COUNT VI)

Defendant argues in the Motion that this count should be dismissed because Plaintiff has not sufficiently alleged an underlying tort and has not alleged any physical impact to satisfy Florida's impact rule. *See* [DE 42] at 14-16. Plaintiff responds that she has alleged several torts and that she no longer alleges mere aggravation of her back injury in the abstract. *See* [DE 43] at 8-9. Because I conclude that Plaintiff still has not satisfactorily alleged an underlying tort for her claim for negligent supervision and retention, I recommend that the Court dismiss this count.

"To state a cause of action for negligent supervision or negligent retention under Florida law the claimant must allege: (1) the existence of a relationship giving rise to a legal duty to supervise; (2) negligent breach of that duty; and (3) proximate causation of injury by virtue of the

breach." *Albra v. City of Fort Lauderdale*, 232 F. App'x 885, 888 (11th Cir. 2007) (citing *Roberson v. Duval Cnty. Sch. Bd.*, 618 So. 2d 360, 362 (Fla. 1st DCA 1993)); *see also Nicholson v. City of Miami*, No. 22-CV-21268, 2022 WL 17073684, at *5 (S.D. Fla. Nov. 17, 2022) ("Plaintiff must show that '(1) the agent/employee/contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury.'" (quoting *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1148 (S.D. Fla. 2016))).

However, "the underlying wrong allegedly committed by an employee in a negligent supervision or negligent retention claim must be based on an injury resulting from a tort [that] is recognized under common law." *Borenstein v. Williams Island Prop. Owners Ass'n, Inc.*, No. 16-25182-CIV, 2019 WL 1406466, at *4 (S.D. Fla. Mar. 28, 2019) (alteration in original) (quoting *Scelta v. Delicatessen Support Servs., Inc.*, 57 F. Supp. 2d 1327, 1348 (M.D. Fla. 1999)); *see Castleberry v. Edward M. Chadbourne, Inc.*, 810 So. 2d 1028, 1030-31 (Fla. 1st DCA 2002); *Tercier v. Univ. of Mia., Inc.*, 383 So. 3d 847, 853 (Fla. 3d DCA 2023). A violation of a statutory provision that is not rooted in common law obviously cannot be the basis of a common law injury. *See Foster v. Select Med. Corp., Inc.*, No. 11-CV-1234-J-37, 2012 WL 1415499, at *10 (M.D. Fla. Apr. 24, 2012).

In her Second Amended Complaint, Plaintiff alleges the existence of several underlying torts, but none is a sufficient foundation to support a claim for negligent supervision and retention. The first underlying tort Plaintiff relies on is invasion of privacy—specifically, intrusion upon seclusion. Plaintiff alleges that Defendants intruded on her seclusion when they remotely accessed her work computer and mirrored it. [DE 38] ¶ 102. However, Plaintiff does not plead sufficient supporting facts to raise an inference that remotely accessing her work computer constitutes an

intrusion upon seclusion. Intrusion upon seclusion requires showing that the plaintiff has a "reasonable expectation of privacy" and that the intrusion is "highly offensive to a reasonable person." *Pet Supermarket, Inc. v. Eldridge*, 360 So. 3d 1201, 1206-07 (Fla. 3d DCA 2023) (first quoting *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003); and then quoting *Jackman v. Cebrink-Swartz*, 334 So. 3d 653 (Fla. 2d DCA 2021)). Plaintiff's allegations do not explain how she has an expectation of privacy in her work computer. Unlike a personal computer, one often does not have a privacy interest in a work computer. *See Bingham v. Baycare Health Sys.*, No. 14-CV-73-T-23, 2016 WL 3917513, at *3 n.3 (M.D. Fla. July 20, 2016). Plaintiff further fails to plead facts showing how remote access of her work computer is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* (quoting *Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062 (Fla. 5th DCA 1991)).

Second, Plaintiff alleges a supposed tort that she calls "Physical Harm-Workstation Confinement." [DE 38] ¶ 102. Like Defendants, I am unaware of such a tort existing at common law. *See* [DE 42] at 15 n.3. One somewhat related tort would be false imprisonment. *See generally Duval v. AVIS Budget Grp.*, 693 F. Supp. 3d 1292, 1300 (S.D. Fla. 2023) (Dimitrouleas, J.) (explaining tort of false imprisonment/false arrest under Florida law); *Bartley v. Kim's Enter. of Orlando, Inc.*, 568 F. App'x 827, 834 (11th Cir. 2014). Yet Plaintiff's allegations are far too vague to support such a tort. Moreover, Plaintiff focuses on the act of "[r]equiring an employee to work in violation of physician-documented medical restrictions," [DE 38] ¶ 102, at 35-36, an allegation that more closely aligns with Plaintiff's ADA claims. Statutory claims that did not exist at common law cannot support a claim for negligent supervision or retention. *See Foster*, 2012 WL 1415499, at *10.

The same goes for the third tort that Plaintiff calls "Negligent - Failure to Communicate Security Threat." *Id.* It is unclear what tort Plaintiff is trying to allege. Assuming Plaintiff is alleging a separate negligence claim related to the overall response to a security threat, Plaintiff has failed to allege enough facts to raise a plausible inference that any employee acted negligently regarding the lockdown incident.

Lastly, Plaintiff alleges intentional infliction of emotional distress as an underlying tort. *See* [DE 38] ¶ 102, at 36-37; [DE 43] at 9. This tort fails as well. "To prove intentional infliction of emotional distress under Florida law, the plaintiff must prove: (1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe." *Skokan v. Royal Caribbean Cruises, Ltd.*, No. 17-24337-CIV, 2018 WL 5044603, at *4 (S.D. Fla. Oct. 17, 2018) (quoting *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990)). "Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not of fact." *Blair v. NCL (Bahamas) Ltd.*, 212 F. Supp. 3d 1264, 1270 (S.D. Fla. 2016) (citing *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007)). Outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Alonso v. Alonso*, No. 18-23668-CIV, 2019 WL 5268554, at *5 (S.D. Fla. Oct. 17, 2019) (quoting *Paul v. Humana Med. Plan, Inc.*, 682 So. 2d 1119, 1121 (Fla. 4th DCA 1996)). Beyond not clearly alleging the other three elements, Plaintiff's allegations do not meet this "extremely high standard" for outrageousness. *Broberg v. Carnival Corp.*, 303 F. Supp. 3d 1313, 1318 (S.D. Fla. 2017) (quoting *Garcia v. Carnival Corp.,* 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012)). Plaintiff first relies on verbal harassment that, as explained when discussing the claim for hostile work environment,

amounts to several stray remarks at best. *See* [DE 38] ¶ 102, at 36. Plaintiff also relies on "selective surveillance of Plaintiff's workstation without authorization," which presumably refers to the accessing and mirroring of Plaintiff's work computer. *Id.* Considering that employees often do not have an expectation of privacy regarding their work computer, this conduct cannot support a claim of outrageousness. The remaining allegations are the movement-reporting requirement and the requirement that Plaintiff seek authorization to leave her desk. *Id.* ¶ 102, at 36-37. Yet these alleged requirements do not raise a plausible inference of outrageousness on their own. The only reason why this conduct helps form the basis of a plausible hostile-work-environment claim under the ADA is because, for that claim, the conduct can be coupled with allegations of a prolonged failure to accommodate. The allegations regarding these work requirements are also vague and unclear.

Plaintiff has again failed to allege an underlying tort at common law. Because such a tort is necessary, the claim for negligent supervision and retention should be dismissed.

## CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** that the Motion [DE 42] be **GRANTED IN PART** and **DENIED IN PART**. The Court should dismiss Count III (Retaliation Under GINA), Count IV (Interference with Rights Under GINA), and Count VI (Negligent Supervision and Retention).

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.

*See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida, this 30th day of September 2026.

**Jared M. Strauss**
**United States Magistrate Judge**